Good morning, Your Honors. Aaron Corthuis with the Northwest Immigrant Rights Project on behalf of Petitioner or Appellant Mr. Koonwaiyou. I'd like to reserve three minutes of my time for rebuttal. All right. The statute at issue in this case, 8 U.S.C. Section 1408, states that all those subject to it are U.S. nationals, quote, at birth. And that's unsurprising, as under the INA, all non-citizen nationals acquire that status at birth. And that principle holds true in this case. In 1986, Congress passed an act that explicitly says that those born before the act's enactment date were included among a new group of U.S. nationals. Under the act, those individuals were made U.S. nationals by including them in Section 1408, which, as I just mentioned, makes individuals nationals, quote, at birth. Now, the district court, of course, held that Mr. Koonwaiyou's mother wasn't a U.S. national at birth. But that interpretation disregards the language making the 1986 act retroactive. Only an interpretation that accounts for the at-birth language in Section 1408 and the statutory note at Section 15B of the 1986 act can make sense of the statute, as well as the legislative history. The best reading of the statute is, quote... I'll ask you a question. The legislative history has to be unequivocal in the legislative intent, more precisely, has to be unequivocal that Congress meant the statute to apply retroactively. And I agree that the at-birth language points in that direction, but I am concerned that the express limitation on the conferral of U.S. nationality in Section 15B points the other way and that that creates ambiguity as to legislative intent. Could you address that issue? Yes, Your Honor. So with respect to what Section 15B-1 does here, and I think it can be harmonized with Section 1408 by concluding that what it does is impose a procedural requirement that ensures that these newly nationalized individuals have to go through this process to, as the legislative history says, substantiate the residency of their parents. Then... Can I ask you something? It doesn't say you'll be deemed a national. It says, you know, the status won't be conferred until you meet the requirements to the satisfaction of Secretary of State. That's right, Your Honor, but I think that's completely consistent with still concluding that once that status is conferred, because you have to go through that process, then it's retroactive to the individual's birth because, at that point, the full language of Section 1408 applies to that individual. And to the extent that there is some ambiguity here, I think that the legislative history demonstrates that what Congress was actually trying to do here was to maintain family unity. The legislative history is very clear in that respect, talking about the fact that what Congress was trying to do was fix the situation in which individuals who've been born on a neighboring island were American Samoan in every respect, as the legislative history says, except that they weren't U.S. nationals. Congress was trying to fix that and maintain American Samoan communities to ensure that those... Can I ask you another question? I'm looking at the Friend v. Holder decision, and it uses that same verb. It says, confers citizenship as of the date of birth. So it seems like the word confer does seem to be actually the grants of whether it's citizenship or U.S. nationality versus just a sort of administrative paperwork acknowledgement of something that already existed from birth. I agree, Your Honor, that it — that the individual does not have U.S. nationality status until they comply with the statutory note at Section 15b-1. They — they — at that point, the status is conferred. But then, because they are someone encompassed within Section 1408, their status is retroactive to birth. And notably, Congress has — has done this in other contexts. So refugee status or LPR — sorry. Refugees who become LPRs are an example of that. And a refugee who becomes an LPR has their status relate back in time to when they became a refugee. That's 8 U.S.C. Section 1159. And ICTA, which we pointed out in our briefing, is another example of how Congress sometimes does this. It makes status retroactive. So there, like here, Congress made individual citizens back to their birth except for certain times that Congress carved out and said, actually, you aren't a citizen, basically, for any time that you've fallen out of that status. And so ICTA, I think, is informative in two ways. It shows that, yes, Congress does use this at-birth language sometimes to make status retroactive when it says that its new act applies to people who are already existing, people already born. But ICTA also shows that when Congress wants to, it knows how to make really clear language to say, actually, no, for certain periods of time in the past, this act's not going to be retroactive. And that's what we — Kagan. But what's not clear is whether the at-birth, the sentence at-birth applies to the new amendment, at least for individuals born before the date of enactment. That's the part that's not clear, that Congress needs to be more explicit if it wants to make it retroactive, right? Well, Your Honor, I don't know what else Congress would have had to do to make it more explicit. And the reason for that is Congress specifies, of course, in Section 15a of the 1980s Act that these are the new individuals that are going to be U.S. nationals. Then, in Section 15b, it says — I should say Section 15a amends Section 1408, which makes individuals nationals at birth. Then Section 15b says, okay, this is going to apply for people who are already alive, people who are born before the enactment date. So Congress is saying there, we're making these individuals nationals at birth. Section 15b-1, of course, then says, but you have to go through this process. You have to substantiate the residency of your parents. At that point, you are then a U.S. national, and your status, because you're in someone who is unencompassed within Section 1408, relates back in time. And — What do you make of the fact that the amendment really references Subsection 4 in the at-birth language preceded the Section 4 — Subsection 4, the one that got — that got changed and added? So the structure of the language goes against your argument, doesn't it? I — I don't think so, Your Honor, because — and I guess it's for the reason that I just said, because Section 15a lists this whole class of new U.S. nationals, then Section 15 — and it's amending Section 1408, saying all these people are nationals at birth because that at-birth language was already in the statute. Then Section 15b says, this applies to people who are already alive. And Section 15b-1 then says, okay, but for those who are already born, we do want to impose this requirement just so that people can't simply claim U.S. nationality. No, you're going to have to go through this process to verify it. And notably, there's other textual clues that support this reading, that the title of the Section 1408 itself, of course, is nationals, but not citizens of the United States at birth. And — and Section 1408 itself is located within this larger subsection of the INA that's entitled, quote, nationality at birth. So those are additional textual indicators that show that what Congress was actually trying to do here was make these individuals U.S. nationals at birth. If Congress had wanted to not make them U.S. nationals, it would have needed to make sure that that at-birth language didn't apply to everyone under 1408-4 like it did. And notably, if you actually look at some of the surrounding subsections in this part, so Sections — I think it's 1402, 1403, these are — these are other examples of where Congress was making people in former U.S. territories citizens in those cases. We're talking about nationals here. And what Congress did in those cases was make clear that at-birth language didn't apply to those people. It just said, these people are citizens as of this date, prospectively. No at-birth language applied to them. Whereas here in this statute, what we have is the at-birth language clearly applies to anyone who Section 1408-4 applies to. So, again, the — the variation there, I think, in the statute is yet another indicator of what Congress was trying to do here. A further point is that when Congress — or under the government's interpretation and under the district court's interpretation, it would render that at-birth language meaningless for people like Mr. Kuhnwayu's mother. That language — Just a question. You're — you're seeming to say that if Congress doesn't explicitly say it's not retroactive, then we assume that it is. But isn't there a presumption against retroactivity unless Congress makes its intent clear? It's true, Your Honor, that in general, a presumption against retroactivity applies. But here, we have that before language, which already, I think — there's no other way Congress could have made the act retroactive, right? That language is explicit in making it retroactive. Oh, you think there's no other way that Congress — they couldn't have just said, this is retroactive to birth for this, you know, the category of people who were born before enactment? I think — that's true. There may be some additional ways it could have done that. But the language, it applies to people before — born before the act is equally as valid of a way of making an act retroactive. And two other points there with respect to — What if we agree with you that you have incredibly strong arguments, but the legislative intent is not clear? In which way do we rule? If to the extent there's ambiguity, Your Honor, I think, one, the remedial purpose of the statute here — and I think this goes to retroactivity, too — is to maintain family unity. And I think that's clear from the text, but it's also clear, of course, from the legislative history. It's to ensure that individuals who grew up in American Samoa, are American Samoan in every respect, can gain U.S. nationality, and they can't be separated from their family. So that remedial purpose, that family unity purpose, as this Court has said in other cases, is yet another reason, to the extent there is ambiguity, to interpret the statute to ensure that Mr. Kunwayu's mother is a national at birth. And to conclude otherwise would effectively create a set of second-class U.S. nationals who can't pass on their nationality to their children. It would recreate the exact problem that Congress was trying to fix when it acted in 1986. I see my time's at three minutes, so I'll reserve the rest for rebuttal. All right. Thank you. Good morning, Your Honors. May it please the Court, my name is Lauren Fassette, and I represent the defendant. Plaintiff here has failed to demonstrate his eligibility for derivative U.S. national status because he was not born to at least one U.S. non-citizen national parent. The facts here are not disputed. This entire case turns on one very simple issue. Can you address the last point that your opposing counsel made? Why would Congress want to create an inferior or second class of U.S. nationals who could not pass on their nationality to all of their children? That's not at all what Congress' intent was here, and that's not what they did. In fact, as Your Honor mentioned earlier, statutes are considered prospective in nature. So the fact that they included people born before this amendment just allowed those people, to now be eligible, but very reasonably they added a specific restriction for those people where the date of that status would be conferred on a date certain. Right, but their nationality is inferior, right? Because they can't pass on their U.S. nationality to all their children, but people born on or after the date of enactment can. Well they could pass on their national status to any child born after they received the status when it was conferred upon them. Oh, so it's not 1987 you're saying. It's only when they get their status confirmed. So any child that's born before their status is confirmed doesn't get nationality. That's correct, Your Honor, because the statute's very clear that for those born before, their status must be, it's not considered a national until it's conferred upon them after they establish their eligibility to the Secretary of State, and that is a date certain. Now here we don't know when Plaintiff's mother actually received her national status, so we'll just assume for argument that it's in 1986 or sometime thereafter. Get it any time before the act was passed. So let me, enlighten me. So if the Plaintiff was born in American Samoa, he would have been a U.S. national or not? Yes. Because he was born with his in-laws in Samoa, he's not a national. That's part of it, but you have to remember. He's born to a woman who has U.S. national status now. Well, at the time of his birth, he was not born to a woman with national status. She was. But he is now, because she has status. Now in, you know, after 1986, when he was 20 years old. So half of her kids are not nationals, and if she has any kids later, they're nationals. In theory, although I don't think there were any children after that point. Theoretically. But the difference is that Plaintiff's mother, she was born in Western Samoa to a U.S. national mother. And at the time of her birth, the statute, Congress required two U.S. national parents to pass on status. So at the time of her birth, she did not qualify. In 1986, Congress amended it to allow just one U.S. national parent to be sufficient to pass on the status. Based on her mother, and based on her birth before the statute was passed. But her birth to a U.S. national. At the time of her birth, her mother was already, always was, a U.S. national. Well, if she wasn't born to a U.S. national, then she doesn't qualify, right? Exactly. And that's where Plaintiff's situation is. But she was born to a U.S. national, and she was born to a U.S. national before the act was made, right? But she still gets to be a citizen. So why doesn't that happen for Mr. Kunwayu? Sure, because at the time Plaintiff's mother was born, at that instant in 1943, I believe, her mother was a U.S. national at that time of her birth. Plaintiff, at the time of his birth, his mother was not a U.S. national. In 1967, she... By operational law. Well, because there was no law allowing her to even apply for national status. So in 1986, when Congress amends it, they were, the legislative history does say... But in the amendment, Congress pretty clearly said that 1408, subsection 4, shall apply to persons born before the date of enactment of the act, right? And Congress knows how to create a limitation if it wants to. If it wants to, like, box out a certain category of individuals, it could say, well, but the at-birth language doesn't apply to you. Congress knows how to do that and didn't do so. It said it shall apply to persons who were born before the date of enactment. But Congress did do that. That's exactly what they did do. They said that the amendment shall apply now to those born before, but then critically, they added 15b, which says, in the case of a person born before, so here, taking from the general at birth where this statute is located, to very specifically including persons born before the date of enactment, the status of national shall not be considered, so meaning is not to be conferred upon, is not bestowed upon, gifted, granted, until But counsel's argument is, sure, it's conferred until, you know, finish that, the rest of that paragraph until then, but once conferred, then basically that individual gets the benefit of the at-birth language just like everybody else. No, Your Honor. That's the argument. That's plaintiff's argument, but that is not what the statute does. And so my question for you is that if there is a limitation that the at-birth language then would not apply to that category of individuals, why isn't it explicitly written in there when Congress knows how to do it? Well, it explicitly is in the government's reading and the district court's reading, that saying conferred upon means that's the time it's given. There's nothing after that that says, and it's then retroactive back to birth. Now the general at-birth language is not... It's all predicated on birth, though, isn't it? Well, the statute talks about people who would apply at-birth, and that's people born on or after. So the government's reading does not ever, it does not disregard the at-birth language entirely. And Kuhn-Waugh was born before the act. Yes. The language that you're talking about is a subsection, and the preamble of the section says the following shall be nationals at birth. Correct, Your Honor. And is titled nationals but not citizens of the United States at birth. So why isn't that clear legislative intent of retroactivity? Well, there are two ways one can be a national, either at birth or through naturalization. And here, prior to this amendment, this part of the statute addressed nationality at birth for people who had two U.S. national parents. So when Congress amended it, it's natural that they make the amendment in this same section. And it is talking about at birth for people born on or after. And that is the general, you know, initial term of the statute. But then they added 15B very specifically. And the plain meaning of the statutory text and several canons of interpretation support the government's reading that, you know, this specific limitation for certain people is, can't be disregarded. It read harmoniously with the at-birth language, which is still important for the born after. We have a binding precedent in our circuit, Friend v. Holder. And there, our court said it doesn't matter if you are determined to be the child born out of wedlock of a U.S. citizen much, much, much, much later. That status as a citizen is retroactive. The citizenship is conferred as of the date of the child's birth. It doesn't matter that paternity is decided many years later. So why shouldn't we follow that precedent? Sure. Friend is completely inapplicable here. It is not the same facts. In Friend, initially, Mr. Friend was challenging whether he could benefit from the 1940 Act, even though at the time of his birth in 1931, he would have been, a different act of 1930 would have applied to him. So the first thing the court said there is, there is no indication or language in the 1940 Act saying that it's retroactive and includes people born before. So very clearly, anyone born before the 1940 Act was excluded, and that included Mr. Friend. Next, the court went on to just analyze the 1940 Act, and it said the provision that Mr. Friend wanted to benefit from about a child born out of wedlock. That provision, again, not applying to anyone born before, but it, in its language, had very specific language that said the provision applies as of the date of birth. So there it said that this will apply as of the date of birth because it's to a child born out of wedlock provided paternity is established. So that person was born on 1940 or after. So that they already, the at-birth language is both mentioned and it makes sense because the statute was prospective and applied to people born on or after. Nothing is said about people born before. They're not included. And then the court went on to analyze another provision related. But it says that if you get citizenship in this way, it is retroactive to your birth. And whether you're deemed to have met the requirements to get citizenship in this way, it doesn't matter if that determination is made later. Because at the time of the person's birth, if 1940 Act applies to them, which is people born on or after it, at the time of their birth, they are, what's the word here? Is it a citizenship? I'm not 100% sure if it was citizenship or national status, but they basically qualify. And there it is more of a, okay, go through and establish the paternity. And as long as you establish that, then yeah, you have always been, since birth, a national. Why isn't that comparable to, okay, meet these requirements of 15A, at least five years, which were attained at the age of 14 years? I mean, isn't that the same sort of administrative eligibility determination as in determining paternity? So no for people born before. So I'll start with people born on or after the 1986 amendment. They are nationals at birth. Okay? Based on now, if they had one U.S. national parent. Because that is the on or after people that apply, the statute's perspective. It starts at birth. They've always qualified because they were born on or after the statute. Congress here did expand to allow people born before to be eligible now. But in doing so, they did still put a specific limitation. And that limitation limits the conferral. The explicit language that you have in Friend on that issue is not present here. Right? It specifically says whether born before or after the effective date of this act. Whereas our amendment doesn't say only U.S. nationals at birth if you are born on or after the effective date of this amendment. The Friend statute did not apply to anyone born before. And the court was very clear that the statute was not retroactive to anyone born before. So it's not applicable to the situation we have with plaintiff's mother who was born before. I'm just saying that the, anyway, why don't we go to the question that Judge Battalion asked you. Would you agree that it seems unfair that if Mr. Kunwayu had siblings born after his mother was conferred U.S. nationality, that those siblings would be able to get U.S. nationality through the mother and Mr. Kunwayu is not? It just seems, does it seem somewhat arbitrary or unfair that siblings from the same mother would have different nationality status? I can see how that would be an unfortunate outcome. But Congress draws lines and that is something that they're allowed to do and are supposed to do. And here, the Congress' goal... Is there like a common sense goal, and this may be outside the record, reason that you can think of why this distinction was drawn? Well, because... What's the rationale behind that? What conceivable rationale could there be? Yeah, for Congress to do that. Well, I can tell you this. Even going with the intent that we know that Congress said, Congress, statements made in Congress explained they wanted to fix the problem for certain long-time residents of American Samoa born outside to a U.S. national parent. And they did fix that. For people born outside to a U.S. national parent, they now get national status, like Plaintiff's mother, who was born to a U.S. national parent. So Congress was expanding the group of people who were going to benefit from U.S. national status. It's just, unfortunately, there's a line drawn here. But is there any logical reason why this certain category of individuals be boxed out from that? If you're going to do the fix, then do the fix for anyone who could conceivably fall within that category. I couldn't say why, you know, all the reasons why Congress made 15B, but they did. They made it. And the language is plain and explicit that there is a temporal limitation for the people born before. They could have just said it only applies on or after, and then no one born before would get anything. So here they did allow more people, like Plaintiff's mother, to benefit. It just doesn't continue on to him. And I understand that that's unfortunate for him. I completely appreciate that. But I can't change what Congress did. And they explicitly made this exception. And the limitation has to be honored here, because to ignore 15B entirely would go against all the canons of statutory interpretation, surplusage and rendering that entire sentence superfluous. And Plaintiff needs us, needs this Court to recognize 15B for the first part of it, which is what adds the it applies to people born before, but then asks this Court to just ignore the entire rest of the statute, where it very specifically lays out the conferral of this status doesn't happen until a date certain. And Plaintiff admits this. He admits that his mother did not have status when he was born. He admits that the conferral, that she doesn't have status until it's conferred. And then asks this Court to take sort of an unsupported leap of legal fiction that somehow it's then considered retroactive, when there's nothing in the statute that says that. And we do have the presumption against retroactivity. So Congress would have had to explicitly state that they wanted this status, once conferred to those born before, to then be retroactive back to birth. And here they didn't do it. They made a specific limitation to a certain people in this part of the statute. And that doesn't contradict or harm the at-birth language, which overarchingly still applies to those born on or after. So we would ask that this Court agree that Plaintiff failed to state a claim for which relief could be granted, and affirm the District Court's decision and dismiss this appeal. Thank you. Thank you, Your Honors. The government has argued in its briefing and mentioned again here today that Plaintiffs or the reading of the statute that Plaintiff has suggested for the Court ignores Section 15b-1. But that's simply not the case. Mr. Kunwayu has outlined in his briefing and I explained here again today that Section 15b-1 imposes a procedural requirement that all individuals who were born before the date of enactment have to follow. That makes sense. If you look at the legislative history, Congress explained why. It wanted to ensure that these individuals substantiated the residency of their parents. And it recognized that actually in the earlier 20th century, records were more sparse for individuals in American Samoa. So what it wanted to do was ensure that there was an orderly processing of these claims to guarantee that these individuals were in fact U.S. nationals. Second, I just want to reiterate that the District Court's interpretation and the government's interpretation creates this second class of U.S. nationals who can't pass on their U.S. nationality. That's the problem that Congress was in fact trying to fix when it acted in 1986. And notably, Mr. Kunwayu's situation is exactly the one that is described in the legislative history. Would you please address the government's argument that this amendment is for the children of at least one U.S. national parent, and that at the time of Mr. Kunwayu's birth, he was not the child of a U.S. national parent? So that is a reasonable line to draw. I don't think it's a reasonable line to draw, Your Honor, because of what some of the questions suggested here today would basically divide up families because it would ensure that some individuals aren't U.S. nationals, but others are. I don't think that's what Congress intended here. Because of, again, what the legislative history says about what Congress was trying to do to ensure the cohesiveness of American Samoan families and communities, and because — and this is ultimately the most important point — because the plain text of the statute says otherwise, because Section 1408 says these individuals, including those in Subsection 4, the new one added in 1986, shall be nationals at birth. Then, of course, in Section 15B, Congress said that applies to those before the date of enactment. And then Section 15B-1 provides this procedural requirement that individuals have to comply with to have their nationality recognized. The last point I want to make is with respect to Friend, because Your Honor asked about that. The government has tried to distinguish Friend by saying that, well, there, the statute was prospective only. And so the Court's language about the at-birth language and the fact that at-birth language, quote, describes the point at which one's status, if successfully established, takes effect, doesn't apply here. But that's the point. I mean, Friend was dealing with a statute that was prospective only, and here, we're dealing with a retroactive statute. And for that reason — But Friend says the retroactivity intent must be clear. And so it just sort of supports the concern that if it's — if there's ambiguity, you have to rule against retroactivity, right? Well, we would submit, Your Honor, that the language here is clear because it says it applies before the date of enactment. Section 1408 itself then says all those individuals shall be nationals at birth. And because of what Congress was trying to do, it's a remedial statute, and to the then that should be interpreted in Mr. Kunwayu's favor. So for all of those reasons, we'd ask that the Court grant the appeal, reverse the District Court's decision, and remand for further proceedings. Thank you. Thank you very much to both sides for your help with our arguments in this case. The matter is submitted, and that concludes our argument calendar for this morning. We're in recess until tomorrow.
judges: NGUYEN, KOH, Bataillon